IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CECILIA CATHERINE TRENTMAN,<br><br>Plaintiff,<br><br>v.<br><br>KEN SALAZAR, Secretary, U.S. Department of the Interior,<br><br>Defendant. | **REPORT & RECOMMENDATION THAT MOTION FOR SUMMARY JUDGMENT BE GRANTED**<br><br>Case No. 2:08-CV-864 TC<br><br>District Judge Tena Campbell<br><br>Magistrate Judge David Nuffer |

District Judge Tena Campbell referred this case to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) calling for a report and recommendation for the proper resolution of dispositive matters.[1] Trentman alleges that she was the victim of discrimination based on age and national origin when she was not hired for the position of Equal Employment Opportunity Manager for the Utah office of the BLM. Defendant has filed a motion for summary judgment.[2] After carefully reviewing the parties' submissions, the court concludes that Trentman has failed to carry her burden to prove discrimination. Therefore, the motion for summary judgment should be granted.

## UNDISPUTED FACTS

Unless otherwise noted, the statement of undisputed facts is taken from Defendant's Memorandum in Support of Motion for Summary Judgment.[3] Trentman did not comply with Rule 56 requirements to "cit[e] to particular parts of materials in the record, including

---

[1] Order of Reference, docket no. 3, filed November 13, 2008.

[2] Motion for Summary Judgment, docket no. 41, filed January 18, 2011.

[3] Memorandum in Support of Motion for Summary Judgment ("Supporting Memorandum") at 2-8, docket no. 42, filed January 18, 2011. Citations to supporting documents have been omitted.

depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to oppose a motion for summary judgment,[4] as such the undisputed facts are not rebutted.

    1. On September 25, 2003, the United States Department of the Interior through the BLM Utah, issued Vacancy Announcement No. BLM-Merit-2003-0065, seeking applications for the position of EEOM, GS-260-13.

    2. At the time of the Vacancy Announcement, Ms. Trentman was employed by the BLM Utah as the Acting EEOM on a temporary appointment from September 2003 to April 2004. Ms. Trentman is Hispanic and was born on October 28, 1941, making her 62 years old at the time she was not selected as the EEOM.

    3. The Department of Interior's human resource office in Denver, Colorado ("the Denver Office") administered this Vacancy Announcement because members of the human resources staff within the BLM Utah were likely to apply for the EEOM, and management wanted to avoid any perceived bias among competing candidates. The Denver Office decided to use the QuickHire electronic application process for this Vacancy Announcement. At the time this Vacancy Announcement was issued, QuickHire was a pilot program that the Secretary was testing in hopes of later using nationwide to fill employment vacancies.

    4. Ms. Trentman submitted her application for the EEOM using the QuickHire electronic process as required by the Vacancy Announcement.

    5. After reviewing the applications, the Denver Office deemed Ms. Trentman as one of eighteen "Best Qualified" applicants. The Denver Office forwarded these eighteen candidates to the BLM for further consideration.

    6. The BLM Utah Associate State Director, Gene Terland, organized a team of three BLM managers to interview the candidates that the Denver Office had referred. The interview team made recommendations to Mr. Terland, and Mr. Terland made the final hiring decision.

    7. The three members of the interview team were: (a) Shelley J. Smith (White, Female, 52 years old), who was then serving as the Supervisory Resource Specialist, BLM Utah; (b) Randy M. Trujillo (Hispanic, Male, 46 years old) who was then serving as the Associate Field Manager, BLM, Cedar City Office; and (c) Patrick F. Madigan (White, Male, 48 years old) who was then serving as the Field Manager, BLM, Monticello Field Office.

---

[4] Fed. R. Civ. P. 56(c)(1)(A).

8. On December 10, 11, and 19, 2003, the interview team conducted telephone interviews of the applicants.

9. During each interview, each member of the team would ask specific questions of each candidate. After each interview, the team would discuss the candidate.

10. The interview team interviewed Ms. Trentman on or about December 10, 2003.

11. During her interview, it became apparent to the interview team that Ms. Trentman was reading from her resume when answering some of the team's questions. Ms. Trentman concedes this.

12. To the members of the interview team, Ms. Trentman did not present herself well during the interview. The team members felt that Ms. Trentman's decision to read from her resume when answering some of the interview team's question[s] and her nervousness showed that she was struggl[ing] to think on her feet. Additionally, the team members believed that Ms. Trentman did not directly respond to their questions.

13. Two interviews after Ms. Trentman's, the team interviewed Denise Brewton, who was ultimately hired as the EEOM.

14. The team members agreed that Ms. Brewton had a good interview because she did not seem nervous and provided focused, thoughtful answers to the team's questions.

15. Regarding job experience, Ms. Trentman had served as an: (a) Equal Employment Opportunity ("EEO") Specialist for the federal government for eight years, and (b) EEO Manager for six years. Thus, Ms. Trentman had approximately fourteen years' experience as an EEO Specialist or EEO Manager.

16. Throughout her career, Ms. Brewton had served as an EEO Specialist within the federal government for a total of eight years. For approximately two of those eight years, Ms. Brewton served as a Supervisory EEO Specialist. Ms. Brewton had also served as an EEO Manager for almost one year. Thus, Ms. Brewton had approximately nine years' experience as either an EEO Specialist or EEO Manager.

17. Although Ms. Trentman had served for a longer period of time as an EEO Manager than Ms. Brewton, Ms. Brewton had served as a contract EEO investigator for the United States Navy for approximately two years. She also worked for almost four years as the Workplace Compliance Officer with EEO responsibilities in Escambia County, Florida. Ms. Brewton also served four years as the Human Resource Director for Escambia County, Florida where she also had EEO responsibilities. Thus, Ms. Brewton had ten years of EEO experience in positions other than an EEO Specialist or EEO Manager.

18. The interview team was also impressed by the fact that Ms. Brewton had earned her Master of Public Administration degree with an emphasis in human resource management from the University of West Florida.  Also, Ms. Brewton had earned a certificate in Employment Discrimination Law from Antioch Law School in Washington, D.C.  Additionally, Ms. Brewton had 39 semester hours at the University of Mississippi School of Law.

19. Ms. Trentman never earned a bachelor's degree much less a graduate degree.

20. The interview team also interviewed Ralph Murdock and Wayne Thomas who, along with Ms. Brewton, were referred to Mr. Terland as the "Top Three."  The interview team stated that both Messrs. Murdock and Thomas had good interviews by being confident, thoughtful, and providing focused answers to the interview team's questions.

21. Mr. Murdock had relevant experience since he had been serving as the Equal Employment Manager for over 18,000 employees at Hill Air Force Base and other locations.  He also had served as the Human Resources Manager at Hill Air Force Base.  Mr. Murdock also graduated *magna cum laude* with a Master of Human Resource Management from Webster University and was fluent in four foreign languages.

22. Mr. Thomas also had relevant experience because he was serving as the Equal Employment Complaints Manager for the Department of Defense in Denver, Colorado.  Like Ms. Trentman, Mr. Thomas had also served as an EEO Specialist.  Mr. Thomas also served as an EEO Advisor; and prior to his managerial experience with the Department of Defense, Mr. Thomas also served as the Personnel Director for the Western Arizona Council of Governments.

23. Unlike Ms. Trentman, Mr. Thomas also held a Master of Business Administration with an emphasis on human resources from Southwest University.  Additionally, Mr. Thomas graduated with honors from Southwest University where he earned a Bachelor of Science in Business Management with a human resource emphasis.

24. Based on both the resumes and interviews, the interview team provided its "Top Three" candidates (i.e., Ms. Brewton, Mr. Murdock, and Mr. Thomas) to Mr. Terland who was the selecting official.

25. Ms. Trentman was not listed among the "Top Three" candidates.

26. In addition to the "Top Three," the interview team created a list of three "Highly Qualified" candidates.  Ms. Trentman was not listed among the "Highly Qualified" candidates..

27. Instead, Ms. Trentman was included by the interview team among the third group of candidates categorized as "Qualified Candidates," who were not referred to Mr. Terland for selection.

28. Mr. Terland re-interviewed the "Top Three" candidates that the interview team had referred to him after checking their references.

29. On February 20, 2004, after the second round of interviews and reference checks for the "Top Three" candidates, Mr. Terland selected Ms. Brewton for the position of EEOM. Mr. Terland stated that he selected Ms. Brewton because of her qualifications, past experience, and positive references from others.

30. The three interview team members and Mr. Terland all stated under oath that neither national origin nor age played any part in their decisions.

31. On April 2, 2004, Ms. Trentman made an initial contact with an EEO Counselor regarding a claim of discrimination based on age and national origin.

32. On June 30, 2004, Ms. Trentman filed an administrative complaint. Ms. Trentman filed another copy of her complaint in December 2005 after BLM inadvertently misplaced it.

33. By letter dated March 8, 2006, the Agency accepted Ms. Trentman's administrative claim as follows:

> The Complainant alleges that she was discriminated against based on national origin (Hispanic) and age (62; DOB: 10/28/41) when, on February 20, 2004, she was not referred to Selecting Official for merit promotion certificate BLM-Merit-2003-0065 EEO Manager, GS-260-13.

34. On August 7, 2008, the EEO Commission ("EEOC") issued a Decision finding that Ms. Trentman failed to prove discrimination because she was unable to show that the BLM's reason for not hiring her–i.e., she was not as strong a candidate as the "Top Three" based on her application and interview–was pretextual. The EEOC informed Ms. Trentman that if she wished to file an action in federal district court, she should do so within 90 calendar days of receipt of the Decision.

35. On November 10, 2008, Plaintiff filed this action wherein she alleged in her complaint that she suffered discrimination by not being selected as the EEOM based on national origin and age in violation of 42 U.S.C. § 2000e-16 and 29 U.S.C. § 633a respectively.

## DISCUSSION

Summary judgment allows cases to be decided prior to a trial if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."[5] The court "review[s] the entire record on summary judgment . . . in the light most favorable to the party opposing summary judgment."[6]

Under the familiar three-part *McDonnell Douglas* framework,[7] Trentman must make a prima facie showing of discrimination based on national origin and age.[8] If Trentman makes a prima facie showing, the burden of production shifts to the Secretary to proffer a nondiscriminatory basis for not hiring Trentman.[9] Once the Secretary has made such a showing, the burden of production shifts back to Trentman to show that the Secretary's proffered reason is mere pretext for discrimination based on national origin or age.[10] Additionally, as to age discrimination only, even if Trentman were unable to show that the Secretary's reasons for not selecting her were pretextual, she can still satisfy the third part of the *McDonnell Douglas* framework if she shows that her age was "a determinative factor" for her not being hired as the EEOM.[11] Even though the burden of production shifts in the *McDonnell Douglas* framework,

---

[5] Fed. R. Civ. P. 56(a).

[6] *Durham v. Herbert Olbrich GMBH & Co.*, 404 F.3d 1249, 1250 (10th Cir. 2005) (quoting *Riley v. Brown & Root, Inc.*, 896 F.2d 474, 476 (10th Cir. 1990)).

[7] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[8] *Sulich v. Sysco Intermountain Food Servs.,, Inc.*, 242 Fed.Appx. 532, 534 (10th Cir. 2007) (unpublished) (requiring prima facie showing for discrimination based on national origin); *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1278 (10th Cir. 2010) (requiring prima facie showing for age discrimination)

[9] *Sulich*, 242 Fed.Appx. at 534; *Jones*, 617 F.3d at 1278.

[10] *Sulich*, 242 Fed.Appx. at 534; *Jones*, 617 F.3d at 1278.

[11] *Wilkerson v. Shinseki*, 606 F.3d 1256, 1266 (10th Cir. 2010) (stating that if the agency provides a non-discriminatory basis for action "the burden returns to [the plaintff] to show either that the [agency's] asserted reason was pretextual, or to show that age was nonetheless a determinative factor in the [agency's] employment decision.")

Trentman always "carries the full burden of persuasion to show that the defendant discriminated on [an] illegal basis."[12]

Even if Trentman has made a prima facie showing of discrimination based on national origin and age, the Secretary has proffered a nondiscriminatory basis for not hiring her and Trentman has failed to show that the Secretary's proffered reason is mere pretext for discrimination based on national origin or age.

## NONDISCRIMINATORY BASIS

The Secretary stated Trentman was not hired because she was not as strong a candidate as the "Top Three" candidates based on her resume and her interview.[13]

First, the applications revealed that even though the Top Three may not have served as EEO Managers for as long as Trentman had, each of the Top Three still had considerable management experience in EEO matters.[14] Moreover, each of the Top Three had a master's degree with an emphasis in human resource management, whereas Trentman never earned a bachelor's degree.[15] Also, Ms. Brewton, who was ultimately hired as the EEOM, had 39 hours of law school credit from the University of Mississippi School of Law and a certificate in employment discrimination law from Antioch Law School.[16] The Top Three's superior higher education credentials coupled with their significant experience provides a legitimate, non-discriminatory basis for neither referring Trentman to Mr. Terland nor hiring her as the EEOM.[17]

---

[12] *Jones*, 617 F.3d at 1278 (alteration in original) (quoting *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1125 (10th Cir. 2005).

[13] Supporting Memorandum at 6, ¶ 24.

[14] Supporting Memorandum at 4-6, ¶¶ 16-17, 21-22; Undisputed Fact Nos. 16, 17, 21-22.

[15] Supporting Memorandum at 5-6, ¶¶ 18-19, 21, 23; Undisputed Fact Nos. 18, 19, 21, 23.

[16] Supporting Memorandum at 5, ¶ 18; Undisputed Fact No. 18.

[17] *See Amie v. El Paso Ind. Sch. Dist.*, 253 Fed.Appx. 447, 454 (5th Cir. 2007) (unpublished) (finding that even though plaintiff had a bachelor's degree and more experience than the selected candidate, defendant's reason for

Additionally, the disparity in the quality of interviews between the Top Three and Trentman provides an independent legitimate, nondiscriminatory basis that Trentman was neither referred to Mr. Terland nor hired as the EEOM. Poor performance during a job interview is, by itself, a legitimate, nondiscriminatory reason for not hiring a job candidate.[18] Trentman's interview was not nearly as strong as the interviews of those in the Top Three because Trentman was so nervous that she read from her application when answering questions instead of engaging in a genuine dialogue with the interview team.[19] Also, Trentman's nervousness resulted in unfocused answers to the interview team's questions.[20] Trentman's performance during the interview legitimately concerned the interview team because, as the EEOM job description states, the EEOM must make "[p]ersonal contacts . . . to resolve difficult and emotionally charged employment situations [and] to obtain agreement . . . ."[21] Thus, Trentman's interviewing struggles provide another nondiscriminatory reason for not referring her to Mr. Terland or hiring her as the EEOM.

## NO SHOWING THAT THE NONDISCRIMINATORY REASONS WERE PRETEXTUAL

In cases such as this where an employer claims to have hired someone other than the plaintiff because of superior qualifications, the plaintiff "must come forward with facts showing an 'overwhelming' 'disparity in qualifications.'"[22] When addressing whether an overwhelming

---

hiring the selected candidate was nondiscriminatory because the selected candidate had a master's degree with more recent relevant experience).

[18] *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1143 (10th Cir. 2009) (finding that poor job interview is a legitimate, nondiscriminatory basis for not hiring plaintiff).

[19] Supporting Memorandum at 3-4, ¶¶ 11-12; Undisputed Facts Nos. 11-12.

[20] Supporting Memorandum at 4, ¶ 12; Undisputed Fact No. 12.

[21] Supporting Memorandum at 12; Exhibit T, docket no. 42-5, filed January 18, 2011.

[22] *Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010)(quoting *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1309 (10th Cir. 2005)).

disparity in qualifications existed, the Tenth Circuit compares only the plaintiff's qualifications with the person's qualifications who was selected for the position.[23] Thus, when determining whether an overwhelming disparity of qualifications exists for purposes of the issue of pretext, the court will compare Trentman's qualifications with Brewton's. Trentman cannot prove pretext because she has no evidence showing an overwhelming disparity in qualifications between her and Brewton.

Trentman served as an EEO Manager for nearly six years for the Bureau of Reclamation.[24] Prior to that, she had served as an EEO Specialist for the Bureau of Reclamation for nearly eight years.[25] Thus, Trentman had approximately fourteen years of experience as either an EEO Manager or EEO Specialist.[26] However, Trentman's fourteen years of experience in the EEO field does not show an "overwhelming disparity in qualifications" between her and Brewton. Brewton had served as an EEO Specialist for approximately eight years.[27] Two of those years included her service as a Supervisory EEO Specialist.[28] Additionally, Brewton had served as an EEO Manager for almost one year.[29] Thus, Brewton had approximately nine years of experience as either an EEO Manager or EEO Specialist.

Brewton had other significant EEO experience in her career. For example, Brewton served for two years as a contract investigator who investigated EEO claims filed against the United States Navy.[30] Additionally, Brewton worked four years as a Workplace Compliance

---

[23] *Johnson*, 594 F.3d at 1212.

[24] Supporting Memorandum at 4, ¶ 15; Undisputed Fact No. 15.

[25] *Id.*

[26] *Id.*

[27] Supporting Memorandum at 4, ¶ 16; Undisputed Fact No. 16.

[28] *Id.*

[29] *Id.*.

[30] Supporting Memorandum at 4-5, ¶ 17; Undisputed Fact No. 17.

9

Officer for Escambia County, Florida, which involved significant EEO responsibilities.[31] Finally, Brewton served four years as the Human Resource Director for Escambia County, Florida, which also involved significant EEO responsibilities.[32] Thus, Brewton worked for ten years in other jobs that involved EEO responsibilities in addition to the nine years she spent working as either an EEO Specialist or Manager. Thus, Brewton had approximately nineteen years of experience in the EEO field, which is at least comparable, if not superior, to Trentman's fourteen years.

Ms. Brewton had more impressive educational credentials than Ms. Trentman. Whereas Trentman did not have a bachelor's degree, Brewton had earned a Master of Public Administration with an emphasis in human resource management, which is relevant to a job with EEO responsibilities.[33] Further, Brewton earned a certificate from Antioch Law School in employment discrimination law, which directly relates to the duties in the EEOM position.[34] Also, Brewton had acquired 39 credit hours at the University of Mississippi School of Law.[35] Thus, when it comes to education, the "overwhelming disparity in qualifications" is actually in Brewton's favor.

Finally, Brewton had a better interview than Trentman. According to the interview team, Brewton provided the comfortable, thoughtful, and focused dialogue with the interview team that Trentman did not provide by reading from her resume and failing to respond directly to their

---

[31] *Id.*

[32] *Id.*

[33] Supporting Memorandum at 5, ¶ 18; Undisputed Fact No. 18.

[34] *Id.*

[35] *Id.*

questions.[36] Consequently, Brewton's ability to communicate her qualifications to the interview team was also superior.

### RECOMMENDATION

Trentman's discrimination claims fail as a matter of law because based on the undisputed facts she has failed to carry her burden to show that the Secretary's nondiscriminatory reasons for not hiring her were pretextual. Accordingly, the Motion for Summary Judgment should be **GRANTED**.[37]

### NOTICE TO THE PARTIES

Within 14 days after being served with a copy of this recommended disposition, a party may serve and file specific, written objections. A party may respond to another party's objections within 10 days after being served with a copy thereof. The rules provide that the district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject or modify the recommended decision, receive further evidence, or re-commit the matter to the magistrate judge with instructions. Failure to file written objections may constitute a waiver of those objections on subsequent appellate review.

Dated September 24, 2011.

BY THE COURT:

_____
David Nuffer
U.S. Magistrate Judge

---

[36] Supporting Memorandum at 4, ¶ 12, 14; Undisputed Fact Nos. 12, 14.

[37] Docket no. 41, filed Jan. 18, 2011.